Filed 3/1/22

## CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL GERONIMO RODRIGUEZ et al.,<br><br>    Defendants and Appellants. | F078864<br><br>(Super. Ct. No. BF172482)<br><br>**OPINION** |

-ooOoo-

APPEAL from judgments of the Superior Court of Kern County. John S. Somers, Judge.

Carla J. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant Michael Geronimo Rodriguez.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant Elijah Rodriguez.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Caely E. Fallini and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections I-A, I-B, and II.

Elijah and Michael Rodriguez[1] were jointly tried and convicted by the same jury[2] of actively participating in a criminal street gang and gang-related, premeditated attempted murder plus attendant crimes and enhancements.  Together and separately, they raise numerous appellate claims.

Together, the Rodriguezes fault both the court for failing to instruct on a lesser included offense and the prosecutor for misstating the law.  They also claim newly enacted Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 1-5) (AB 333) applies retroactively and now invalidates the active participation gang crime and the gang-related crime enhancements.

Separately, Elijah blames the court and his counsel for permitting certain evidence to prejudice his case notwithstanding the fact it was admitted solely against Michael.  He also challenges the evidence necessary to prove various enhancements including personal infliction of great bodily injury and personal firearm use.  Last, Michael claims the court's instructions on aiding and abetting were unlawful.

We agree, and the People concede, AB 333 applies retroactively and requires us to reverse the active participation gang crime and the gang-related crime findings.  We also find merit in two of Elijah's evidentiary claims.  The record *in his case* insufficiently proved his precise role in the crime, substantially undermining the personal infliction and personal use enhancements.  The remaining claims lack merit.

---

[1] Elijah and Michael are brothers.  We refer to them by their first names for clarity and intend no disrespect.

[2] Although Elijah and Michael were tried jointly by the same jury, throughout the opinion we refer to their separate trials because certain evidence was admitted against only one brother or the other.  The separate admittance of evidence is germane to the issues.

BACKGROUND

**Charges**

The Kern County District Attorney charged each Rodriguez with four crimes: Attempted murder (Pen. Code,[3] § 664/187; count 1), assault with a firearm (§ 245, subd. (b); count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), and active gang participation (§ 186.22, subd. (a); count 4). Alleged enhancements included premeditation and deliberation (§ 664, subd. (a)), gang-related crime (§ 186.22, subd. (b)), personally inflicting great bodily injury (§ 12022.7, subd. (a)), personal use of a firearm (§ 12022.5, subd. (a)), and discharging a firearm causing great bodily injury (§ 12022.53, subd. (d).)

**Trial Evidence**[4]

The evidence indicated Elijah and Michael were traveling together in a car driven by a third person. The vehicle eventually crossed paths with the victim.

At trial, the victim testified three "African Americans" attacked him one night. But in a prior statement, the victim had described "two Hispanic males" confronted him while speaking " 'their boo boo gang shit ….' " In the prior statement, the victim explained one man hit him in the head with a gun, and the other man punched him in the chest. A treating physician later testified the victim suffered a "collapsed lung" and chest wounds.

Law enforcement responded to the scene, followed a suspect vehicle to a home, and subsequently arrested Elijah and Michael. While Elijah and Michael were awaiting interviews with law enforcement, Michael stated he heard someone "over the radio"

---

[3] All statutory references are to the Penal Code.

[4] Some of the technical evidence necessary to prove the existence of a criminal street gang (§ 186.22, subd. (f)) is not relevant to the issues on appeal and we omit it from our factual summary.

mention a "confrontation" and "fight." Elijah responded, "I wonder if people know that it was us."[5]

In separate interviews with law enforcement, Elijah and Michael both implicated themselves in the crime. Elijah admitted his presence at the scene but denied any involvement or knowledge. Michael explained that, while riding in the car, the victim struck it prompting Michael to confront him. Michael believed the victim was a rival gang member and asked him, "What the fuck is your problem?" The victim produced a firearm and pointed it at Michael, but Michael knew he was "bluffing" and "wasn't gonna fire …." Michael "picked up something," disarmed the victim, and "sock[ed] him."

The driver also testified at trial. She claimed she could not remember anything, but in a prior statement explained she pulled over after either Elijah or Michael said, "Wait I think I know that guy." Both Elijah and Michael then exited the vehicle and an "altercation" ensued.

A gang expert witness testified and opined Elijah and Michael were both active gang members. Their gang's primary activities included assault and homicide.[6] The expert explained three other gang members were previously convicted of illegally possessing firearms.[7]

The prosecutor asked the expert a hypothetical question involving an assumption about two gang members assaulting a person "that one of those [gang] members believes" is "a member of [a] rival" gang. The expert was asked to render an opinion if that hypothetical crime is gang related. The expert answered the crime benefits the gang

---

[5] This conversation was recorded.

[6] A primary activity is a "criminal act[] enumerated" in section 186.22, subd. (e). (§ 186.22, subd. (f).)

[7] These convictions were admitted to prove the existence of a criminal street gang (§ 186.22, subd. (f)) and are relevant to the AB 333 claim.

4.

because "it shows that the gang is still active and …violent," and the crime is associated with the gang "because … two … gang members [are] committing one of the [gang's] primary activities" together.

The gang expert also testified one gang member is expected to assist a fellow gang member involved in an altercation with any person, rival or not. Last, the fact only one gang member believed a person was a rival gang member was immaterial to the expert's opinion the crime benefited and was associated with the gang.

**Relevant Jury Instructions**

The jury was instructed certain statements were only admissible against each Rodriguez. Specifically, Elijah's separate interview was admissible only against Elijah and Michael's separate interview was admissible only against Michael.

**Verdict and Sentence**

The jury found each Rodriguez guilty as charged. It also found all enhancements proven true.[8] Elijah and Michael were each sentenced to serve 18 years to life in prison.

**DISCUSSION**

First, we address the joint claims. Next, we resolve Elijah's arguments. Last, we reach Michael's sole remaining contention. We reverse the gang crime convictions, vacate the gang-related crime enhancements, strike two enhancements for insufficient evidence in Elijah's case, but otherwise affirm each judgment.

**I. Joint Claims: Lesser Included Offense Instructions and Prosecutorial Error**

The Rodriguezes jointly raise two claims in this case. First, did the court fail to instruct the jury on attempted voluntary manslaughter as a lesser included offense to attempted murder? Second, did the prosecutor commit error in closing argument by

---

[8] The court dismissed the section 12022.53 enhancements prior to the jury's deliberations. It also dismissed the section 12022.7 enhancement to count 2.

5.

analogizing the deliberation necessary to prove enhanced attempted murder[9] to the decision to drive through a yellow light?

The People oppose each claim. After careful review, we find no prejudicial error.

**A. No Sua Sponte Duty to Instruct on Attempted Voluntary Manslaughter**

Both Elijah and Michael argue the trial court erred in not instructing on the lesser included offense of attempted voluntary manslaughter based on heat of passion. Michael separately adds imperfect self-defense as a basis for the instruction.

The People contend the evidence did not support instructions on attempted voluntary manslaughter under either theory. We agree.

"A trial court has a sua sponte duty to 'giv[e] instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Eid* (2014) 59 Cal.4th 650, 656.) " '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' " (*People v. Licas* (2007) 41 Cal.4th 362, 366 (*Licas*); *People v. Gonzalez* (2018) 5 Cal.5th 186, 196—197 (*Gonzalez*).)

A trial court's asserted error in failing to instruct on a lesser included offense is reviewed de novo. (*Licas, supra,* 41 Cal.4th at p. 366.) In reviewing the record for this type of error, we view it in the light most favorable to the accused. (*People v. Woods* (2015) 241 Cal.App.4th 461, 475.) "[U]ncertainty about whether the evidence is sufficient to warrant instructions should be resolved in favor of the accused [citation]. Even evidence that is unconvincing or subject to justifiable suspicion may constitute

---

[9] "The crime of attempted murder is not divided into degrees, but the sentence can be enhanced if the attempt to kill was committed with premeditation and deliberation." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)

6.

substantial evidence and may trigger the lesser-included-offense requirement." (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 792.) "The failure to instruct on lesser included offenses supported by substantial evidence" is reversible only when it is reasonably probable the accused would have received a more favorable result absent the error. (*Gonzalez, supra,* 5 Cal.5th at pp. 195-196.)

"Attempted murder requires a direct but ineffectual act towards killing a person and that the defendant harbored express malice aforethought. [Citation.] Attempted voluntary manslaughter is the unlawful killing of a person without malice. [Citation.] Attempted voluntary manslaughter is a lesser included offense of attempted murder." (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1241.)

"Express malice is an intent to kill." (*People v. Gonzalez, supra,* 54 Cal.4th at p. 653.) Intent to kill is absent where, for example and particularly relevant, a person acts under an actual but unreasonable belief in self-defense, i.e., imperfect self-defense. (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1226 (*Rangel*).)

Intent to kill is also absent under heat of passion. "Heat of passion … is a state of mind caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation." (*People v. Beltran* (2013) 56 Cal.4th 935, 942.) "To be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react,* without reflection." (*Id.* at p. 949.)

We may quickly dispose of heat of passion. There is simply no evidence either Rodriguez acted under heat of passion. At best, Michael explained he approached the victim after the victim struck the car in an unknown manner. This is insufficient provocation to cause an ordinary person to react without reflection.[10]

---

**10** Without elaboration, Elijah argues "[reasonable] jurors could have believed that the fight occurred in the heat of passion, upon the provocation of … striking [the] car." We disagree because the record insufficiently develops adequate provocation.

It is true, on the other hand, Michael claimed the victim produced a firearm. This evidence is certainly more provocative than the evidence describing the victim striking the car. But Michael forcefully disclaimed a rash reaction. Instead, he stated he knew the victim would not shoot, decided to arm himself, and then disarmed and hit the victim.[11]

For a related reason, the record does not support imperfect self-defense.[12] As noted, imperfect self-defense is an actual but unreasonable belief in self-defense. (*Rangel, supra,* 62 Cal.4th at p. 1226.) There is no evidence of actual belief in self-defense in this case. The only evidence is Michael did not believe the threat was real. In sum, we conclude the record was insufficient to invoke the trial court's duty to instruct on attempted voluntary manslaughter as a lesser included offense.[13]

## B. No Prosecutorial Error

The Rodriguezes next claim "the prosecutor trivialized the elements of premeditation and deliberation when he argued that an example was when a driver approaches a green traffic light turning yellow." They also fault the prosecutor for arguing " 'any amount of reflection is deliberation.' " Finally, they argue trial counsel were ineffective by failing to object.

The People assert the prosecutorial error claim is forfeited for lack of objection. They concede the prosecutor misstated the law in reference to deliberation but claim the misstatement was harmless.

---

[11] This evidence was not admitted in Elijah's trial.

[12] Elijah does not claim imperfect self-defense.

[13] Additionally, we note the trial court openly discussed attempted voluntary manslaughter as a lesser included offense. Each counsel explicitly declined a corresponding jury instruction.

We resolve the issue on its merits.[14] While we agree the prosecutor did misstate the law, it did not amount to prejudicial error, and neither trial counsel was ineffective for failing to object.

### i. Additional Background

Prior to closing arguments, the court instructed the jury "deliberation" means "carefully weigh[ing] the consideration for and against [killing] and[,] knowing the consequences[,] decid[ing] to kill. … The test is the extent of the reflection not, the length of time."

In closing argument, the prosecutor made the following analogy:

> "As I have had it described before to me, an example of deliberation is when a driver is approaching a stale green light and as that driver is approaching the light, and as that driver is approaching, it turns yellow. At that point the driver has some decisions to make. One, do I slam on the brakes? Or two, do I slam on the gas pedal and try to blow through the light. If I do slam on the gas pedal, am I going to get a ticket or worse, am I going to get in a wreck. That's an example of the deliberation. It's also an example of the amount of time that is required for deliberation and, again, there is no set amount of time that – for an attempted killing to be deliberate. According to the instruction, any amount of reflection is deliberation."

Neither defense counsel objected.

A short time later, Elijah's counsel argued, "I think coming up to a yellow light, you get pushed in the position of between a rock and a hard place, and you have to make an emotional decision whether you are going to go for it or not, not that you premeditated and intentionally risked running a red light. It takes a little more planning." After, Michael's counsel retorted,

---

[14] Appellate courts have discretion to review forfeited claims. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.)

9.

> "[the] example of the car going through the yellow light, well, … the problem here is that with the car going through a yellow light, that's something all of us have decided or had to deal with probably hundreds of times in our driving careers, you know. You know, every few days we have to make that decision, am I going to go through that light? Am I not going to go through that light? … It's more of a reaction than a deliberation. So deliberation does take some time. You have to think about the consequences."

No party again discussed the analogy.

### ii. Analysis

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).) "To establish such error, bad faith on the prosecutor's part is not required." (*Id.* at p. 666.) "In the absence of prejudice to the fairness of a trial, a prosecutor's errant remarks do not require reversal." (*People v. Dworak* (2021) 11 Cal.5th 881, 914 (*Dworak*).)

"As a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' [Citation.] The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct." (*Centeno, supra,* 60 Cal.4th at p. 674.)

We initially note "[n]othing in this record indicates that an objection would have been futile. Nor was the prosecutor's argument so extreme or pervasive that a prompt objection and admonition would not have cured the harm." (*Centeno, supra,* 60 Cal.4th

at p. 674.)  Ordinarily, this would forfeit the issue.  (See *ibid.*)  We choose, however, to resolve the claim on its merits because the Rodriguezes anchor it to their counsels' purported failure to object.

"  '[T]o establish a claim of ineffective assistance of counsel, [a] defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] ... under prevailing professional norms."  [Citations.]  Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' "  (*People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).)  " ' "If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' "  (*Ibid.*)

The Rodriguezes have failed to discharge the burden under either prong.  Although neither of their counsel objected to the prosecutor's traffic-light analogy, both explicitly addressed it in their respective arguments to the jury.  We decline to find as a matter of law such a tactic is unprofessional or unreasonable.

In any event, were we to assume counsel were unprofessional, we would not find prejudice.  The prosecutor's comment "any amount of reflection is deliberation" was error but brief and isolated.  (See *Dworak, supra,* 11 Cal.5th at pp. 914—915 [brief, erroneous comments "did not compromise fairness of the trial"]; *People v. Gomez* (2018) 6 Cal.5th 243, 311 [harmless error where challenged argument was " 'brief and isolated' "].)  As for the remainder of the analogy, both counsel tackled it directly.

Importantly, the trial court otherwise properly instructed the jury on deliberation and "[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions."  (*People v. Sanchez* (2001)

11.

26 Cal.4th 834, 852 (*Sanchez*).)  The Rodriguezes have not overcome this presumption. (*Dworak, supra,* at 11 Cal.5th at p. 914 [reversal for prosecutorial error appropriate only where trial rendered fundamentally unfair].)

Finally, the Rodriguezes analogize the prosecutor's argument to "[arguments] that have been held to impermissibly make light of the reasonable doubt standard of proof." They principally rely on three cases to illustrate the point.  We take each in turn.

In *People v. Nguyen* (1995) 40 Cal.App.4th 28, the prosecutor argued reasonable doubt was " 'a very reachable standard that you use every day in your lives when you make important decisions, decisions about whether you want to get married, decisions that take your life at stake when you change lanes as you're driving.' " (*Id.* at p. 35.) The appeals court explained "the almost reflexive decision to change lanes while driving is quite different from the reasonable doubt standard in a criminal case." (*Id.* at p. 36.) The court expressed "disapprov[al] of arguments suggesting the reasonable doubt standard is used in daily life to decide such questions as whether to change lanes or marry" but ultimately found the complaint forfeited because the defendant "did not object." (*Ibid.*)  Here, the prosecutor's argument did not invoke the standard of proof.

In *People v. Johnson* (2004) 115 Cal.App.4th 1169, the trial judge equated reasonable doubt to decisions involving vacation planning.  (*Id.* at p. 1171.)  The appeals court stated, "We are not prepared to say that people planning vacations or scheduling flights engage in a deliberative process to the depth required of jurors or that such people finalize their plans only after persuading themselves that they have an abiding conviction of the wisdom of the endeavor." (*Id.* at p. 1172.)  It held the comment "reduced the prosecution's burden to a preponderance of the evidence." (*Ibid.*)  The prosecutor's analogy in this case did not relate to the burden of proof.

In *People v. Avila* (2009) 46 Cal.4th 680 (*Avila*), the prosecutor "used [an] example of assessing one's distance from a traffic light, and the location of surrounding vehicles, when it appears the light will soon turn yellow and then red, and then

12.

determining based on this information whether to proceed through the intersection when the light does turn yellow ….” (*Id.* at p. 715.) The Supreme Court held the prosecutor properly used the analogy “as an example of a ‘quick judgment’ that is nonetheless ‘cold’ and ‘calculated.’ ” (*Ibid.*)

This case is no different. The prosecutor here used the yellow light analogy to explain how quickly one could deliberate by assessing multiple factors with haste. It did not relate to, let alone have the effect of reducing, the burden of proof.

In sum, the Rodriguezes cannot prove ineffective assistance. Although their counsel did not object to the prosecutor’s argument, counsel did address the asserted error by direct argument. Indeed, their combined response persuasively explained deliberation involves meaningful thought, while also undermining the argument the decision to change lanes is akin to actual deliberation. In any event, the prosecutor’s traffic-light analogy was not error. (*Avila, supra,* 46 Cal.4th at p. 715.) Finally, the prosecutor’s misstatement “any amount of reflection is deliberation” was brief and does not rise to prejudicial error. The prosecutorial error claim fails.[15]

## C. The AB 333 Amendments to Section 186.22 Apply Retroactively and Require Reversal of the Gang Crime and Vacatur of the Gang Enhancements

AB 333 amended section 186.22 to, in various respects, *increase* the evidentiary burden necessary to prove a gang-related crime enhancement. We conclude the amendment is ameliorative and applies retroactively to cases not yet final on appeal. In this case, AB 333 requires us to reverse the count 4 gang crime and vacate all gang enhancements.

---

**15** In addition, the Rodriguezes swiftly claim the prosecutor “placed the prestige of his office behind the argument” “by prefacing his analogy with the phrase ‘as I have had it described to me before[.]’ ” We decline to infer this anonymous, vague reference placed the district attorney’s prestige behind the argument.

### i. Retroactivity

"[A]bsent evidence to the contrary, [we presume] the Legislature intended amendments to statutes that reduce punishment for a particular crime to apply to all whose judgments are not yet final on the amendments' operative date. [Citations.] This principle also applies when an enhancement has been amended to redefine to an appellant's benefit the conduct subject to the enhancement." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344 (*Lopez*).)

AB 333 "increases the threshold for conviction of the section 186.22 offense and the imposition of the enhancement …." (*Lopez, supra,* 73 Cal.App.5th at p. 344.) It is an ameliorative amendment. Because the bill and its implementation are silent regarding retroactivity, it *does* apply to all nonfinal cases on appeal.[16] (*Ibid.*; *In re Estrada* (1965) 63 Cal.2d 740, 744-746.)

### ii. Analysis

Although AB 333 transforms section 186.22 in several respects, we focus on one change in particular. To prove the existence of a criminal street gang itself, section 186.22, subdivision (f), requires proof of "a pattern of criminal gang activity." "The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses." (*People v. Valencia* (2021) 11 Cal.5th 818, 829.)

Prior to AB 333, it was unnecessary to prove predicate offenses were gang related.[17] (*People v. Gardeley* (1996) 14 Cal.4th 605, 609-610 (*Gardeley*) ["We disagree that the predicate offenses must be 'gang related.' "].) Now, the law requires "the [predicate] offenses [to] commonly benefit[] a criminal street gang, and the common

---

[16] As noted, the People concede the law applies retroactively in this case.

[17] Indeed, the jury here was instructed "[t]he crimes, if any, that establish a pattern of criminal gang activity, need not be gang-related."

14.

benefit of the offense is more than reputational," effectively overruling *Gardeley, supra*. (§ 186.22, subd. (e)(1).)

As now defined by statute, there was no evidence the predicate offenses proven at trial commonly benefitted a gang.[18]  (See § 186.22, subd. (g) [defining what constitutes a more than reputational common benefit].)  Accordingly, the evidence adduced at trial to prove a criminal street gang itself is no longer valid.  The existence of a criminal street gang is a prerequisite to proving the gang crime and the gang enhancement.  (§ 186.22, subd. (f); see *Lopez, supra,* 73 Cal.App.5th at p. 345-347.)  On this basis, we reverse the count 4 gang crime convictions and vacate all gang enhancements.[19]

## II.  Elijah's Arguments: Inadmissible Evidence and Evidentiary Sufficiency

Elijah's contentions center around the inadmissibility in his trial of Michael's law enforcement interview, and whether the evidence was sufficient to prove certain facts. As for Michael's interview, Elijah claims the court failed to admonish the jury that evidence was not admissible against Elijah *immediately preceding* its introduction into evidence.  In other words, the court's *later* admonition came too late.  Relatedly, Elijah blames his counsel for failing to request a contemporaneous admonition.

Next, Elijah faults his counsel for not objecting to the hypothetical question the prosecutor asked the gang expert.  He complains the hypothetical included an assumed fact not admissible against him, i.e., that one assailant believed the hypothetical victim was a rival gang member.

---

[18] The People concede the evidentiary void.

[19] Because we rule on this basis, we need not address other arguments AB 333 requires reversal.  Elijah urges the recent amendments further undermine the evidentiary sufficiency for the gang enhancements.  We disagree.  Nothing in AB 333 alters our conclusion the evidence was sufficient to prove Elijah committed a gang-related crime in association with a gang *as the law stood at the time*. (*Post,* II., C., iii.; see *People v. Shirley* (1982) 31 Cal.3d 18, 71 [retrial permitted where posttrial change in law invalidates certain evidence because prosecution proved its "case under the law as it then stood" having "had little or no reason to produce other evidence of guilt."].)

15.

With reference to evidentiary sufficiency, Elijah challenges the evidence to prove he premeditated and deliberated the attempted murder, committed the crime to benefit a gang, personally inflicted great bodily injury, and personally used a firearm. The People concede the evidence did not prove Elijah personally inflicted great bodily injury but oppose all other arguments.

We conclude the evidence failed to prove both Elijah personally inflicted great bodily injury and personally used a firearm. We will order these enhancements stricken. The remaining claims lack merit.

## A. The Limiting Instruction Was Properly Given

Elijah points out "[t]he trial court did not instruct the jury that it could not use Michael's [law enforcement interview] against Elijah at the time of the admission of Michael's hearsay statement." That interview, he claims, supplied a gang motive and "tightly linked [him] to the crime …." He asserts the court belatedly admonished the jury about the inadmissibility of Michael's statement at a point where "the jury had already absorbed Michael's statement and naturally used it to connect [Elijah] to the crime as it followed along with the evidence." This, he claims, violated his Sixth Amendment right to confrontation. Similarly, he faults his counsel for failing to demand a timely limiting instruction.

The People argue:

> "Elijah forfeited his claim by failing to object below. Regardless, the trial court did not abuse its discretion in giving the limiting instruction at the end of trial. The timing was reasonable, because the limiting instruction related to the manner in which the jury was to conduct its deliberations. And, trial counsel was not ineffective for failing to object to the timing of that instruction."

We generally agree with the People's argument.

16.

### i. Additional Background

At the beginning of the trial the jurors were instructed to "[k]eep an open mind throughout the trial" and to "not make up [their] mind[s] about the verdict or any issue until after … discuss[ing] the case with the other jurors during deliberations." (CALCRIM No. 101.) When Michael's law enforcement interview—in which he admitted to confronting and believing the victim was a rival gang member—was introduced into evidence, the jury was not instructed it was inadmissible against Elijah.

At the end of evidence, the jury was informed about the separate admissibility of Elijah's and Michael's distinct law enforcement statements. The prosecutor subsequently emphasized that separate admissibility no less than five times in closing argument.

### ii. Analysis

"Evidence Code section 355 requires the court to give appropriate limiting instructions if properly requested. However, the timing of these instructions is in the trial court's discretion. [Citations.] Thus, the trial court is not obliged to give limiting instructions the moment they are requested or when the limited evidence is presented; subsequent instruction can be sufficient in a proper case." (*People v. Dennis* (1998) 17 Cal.4th 468, 533-534.)

Put simply, so long as a limiting instruction is effective, it does not implicate the right to confrontation. Because the jury was instructed to not reach any conclusion until it began its deliberations, i.e., a point *after* which it heard the limiting instruction at issue, the instruction was effective and sufficient to safeguard Elijah's right to confrontation.[20] Contrary to Elijah's contention, we see no reason why the jury could not follow this instruction. (See *Sanchez, supra,* 26 Cal.4th at p. 852 ["Jurors are presumed able

---

[20] A more pertinent question is whether the court abused its discretion by waiting to provide the limiting instruction in this case. Because the instruction was ultimately effective, it likewise was not an abuse of discretion to provide it later in the trial.

to understand and correlate instructions and are further presumed to have followed the court's instructions."].)

Moreover, the prosecutor reiterated that limitation to jury several times prior to its deliberations. In these circumstances, we have no reason to doubt the instruction's efficacy and, because it was effective, Elijah was not prejudiced by his counsel's asserted failure to demand an earlier instruction.

**B. Counsel Was Not Ineffective Relative to the Hypothetical Question**

Elijah blames counsel for not objecting to the prosecutor's hypothetical question because it included a fact admissible only against Michael, i.e., that one of the assailants believed the victim was a rival gang member. The People claim Elijah was not prejudiced by that assumption in the hypothetical question. We agree.

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 685—686.) " '[T]o establish a claim of ineffective assistance of counsel, [Elijah] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] ... under prevailing professional norms." [Citations.] Unless [he] establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If [he] meets the burden of establishing that counsel's performance was deficient, he … also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*Bell, supra,* 7 Cal.5th at p. 125.)

18.

"The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." (*In re Cox* (2003) 30 Cal.4th 974, 1019-1020; *People v. Carrasco* (2014) 59 Cal.4th 924, 982.) We follow that course here.

Although Elijah's counsel did not object to the hypothetical question, Michael's counsel did cross-examine the expert regarding the exact issue on appeal. The expert replied the fact only one hypothetical assailant believed the victim was a rival gang member was irrelevant to opining the crime was gang related. Because Michael's counsel cross-examined the expert first, it was not deficient or unprofessional for Elijah's counsel to not ask the same question.[21]

For the same reason, Elijah cannot demonstrate prejudice. The expert testified the assumed fact now challenged on appeal was irrelevant to the opinion. In other words, the fact one hypothetical assailant did *not* believe the victim was a rival gang member did not change the opinion the crime was gang related.[22]

Most importantly, the victim testified *both* of his assailants were speaking "their boo boo gang shit." There is no reasonable doubt Elijah was one of those assailants. The expert testified the crime was associated with the gang because it was a primary activity committed by two active gang members. This evidence, amplified by testimony gang members are expected to assist one another in battle, left little doubt Elijah assaulted the

---

[21] We might have concluded Elijah's counsel was deficient were there no objection *and* no pertinent cross-examination in the record.

[22] To this extent, the jury was instructed: "An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion." (CALCRIM No. 332.)

victim with an underlying gang motive. Assumed facts derived from Michael's separate interview are immaterial to this conclusion.

Accordingly, it is not reasonably probable the jury would have had a reasonable doubt the crime was gang related had Elijah's counsel interposed an objection to the hypothetical question. For these reasons we reject the ineffective assistance claim.

## C. Evidentiary Claims

Elijah presents four evidentiary challenges. One, is the evidence sufficient to prove Elijah premeditated and deliberated the attempted murder? Two, is the evidence sufficient to prove the crimes were gang related? Three, is the evidence sufficient to prove Elijah personally used a firearm? Four, is the evidence sufficient to prove Elijah personally inflicted great bodily injury?

The People concede the evidence insufficiently proved Elijah personally inflicted great bodily injury but dispute the other claims. We conclude the evidence sufficiently proved premeditation, deliberation, and gang relation but find it insufficient to prove Elijah personally inflicted great bodily injury or personally used a firearm.

### i. Reviewing Standard

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

20.

### ii. Premeditation and Deliberation

" ' " ' "[P]remeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " ' " (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*).) An attempt to kill " ' " 'is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " ' " (*Ibid.*)

There are " 'three basic categories' of evidence … generally found sufficient to sustain a finding of premeditation and deliberation: (1) planning activity, or 'facts about how and what defendant did *prior* to the actual [attempt to kill] which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, [a] killing'; (2) motive, or 'facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim'; and (3) manner of [attempt], or 'facts about the nature of the [attempt] from which the jury could infer that the *manner* of [attempted] killing was so particular and exacting that the defendant must have [intended to kill] according to a "preconceived design" to take his victim's life in a particular way for a "reason" ....' " (*Morales, supra,* 10 Cal.5th at pp. 88—89.) We find evidence of each category in this case.

Planning activity is evidenced by the fact at least one Rodriguez was armed with a weapon. Although only one of them believed he recognized the victim and asked the driver to pull over, *both* of them exited the vehicle together and confronted the victim while expressing gang-related language. This evidences a preconceived—even if hasty—plan to accost the victim.

Similarly, the record proves a motive. The fact Elijah preceded the attack with gang-related language readily proves a gang-related motive.[23] As for manner of attempt, the fact the attack involved a hallmark deadly weapon and serious chest wounds leaves little room to doubt the assailants intended to kill.

Taken together and combined with the fact one of the gang's primary activities is homicide, the jury could readily infer Elijah initiated this encounter with premeditation and deliberation. In other words, the jury could reasonably conclude Elijah first identified a victim and then launched a gang-related attack while intending to kill. The fact it appears Elijah's and the victim's paths crossed fortuitously is immaterial. (*Morales, supra,* 10 Cal.5th at p. 88 [" ' "cold, calculated judgment may be arrived at quickly …." ' "].) Accordingly, we find the evidence sufficient to prove premeditation and deliberation.

### iii. Gang-Related Crimes

Elijah argues "the prosecution presented insufficient evidence that [he] committed a crime for the benefit of the gang[.]" He concludes "the prosecution presented no evidence regarding [his] intent in the incident …." He is mistaken.

The gang-related crime enhancement applies to crimes "that were (1) ' "committed for the benefit of, at the direction of, or in association with any criminal street gang," ' and (2) ' "with the specific intent to promote, further, or assist in any criminal conduct by gang members." ' " (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) The record here amply proved Elijah committed the crime in association with a gang and,

---

[23] Elijah states "the evidence [did not] show that [he] in particular had a motive with respect to" the victim. We disagree. The victim clearly described *both* attackers were speaking "their boo boo gang shit."

due to the fact he committed it in tandem with a fellow gang member, necessarily proved an intent to "assist in any criminal conduct by gang members."[24]  (§ 186.22, subd. (b).)

As discussed above, the victim stated Elijah and Michael were "speaking" gang-related language prior to the attack.  The gang expert testified gang members are not only expected to attack rival gang members but also expected to assist fellow gang members involved in *any* confrontation.  For these reasons, the jury could reasonably conclude the crimes in this case were associated with a gang, i.e., would not have occurred if not for a gang-related motive underlying the attack.

Because the "evidence establishes [Elijah] intended to and did commit the charged [crimes] with known members of a gang, the jury [could] fairly infer that [he] had the specific intent to promote, further, or assist criminal conduct by those gang members." (*People v. Albillar* (2010) 51 Cal.4th 47, 68.)  In sum, the evidence fairly proved Elijah committed gang-related crimes.

### iv.  Personal Firearm Use

Elijah asserts the evidence demonstrated "two people assaulted [the victim], one using a knife and the other a gun[,] [b]ut as to which role [he] played, the jury had no evidence."  The People acknowledge Michael's confession which shed light on Elijah's role was not admissible against Elijah.  Nonetheless, they claim "in light of [the victim's] injuries and statement about the roles of [the] attackers, the jury could logically infer that Elijah used [the] gun …."  We fail to comprehend the logic.

---

[24] In briefing, Elijah only alleges the evidence did not prove a benefit to the gang. His argument is somewhat conclusory and vague.  We note the prosecution at trial alleged and argued he committed the crime *either* to benefit the gang or in association with the gang.  The jury was appropriately instructed in the alternative.  Proof of either is sufficient to uphold the verdict and, because we conclude the crimes here were in association with a gang, we need not address the benefit theory. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1127 ["if there are two possible grounds for the jury's verdict, one unreasonable and the other reasonable, we will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable ground"].)

Put simply, no evidence established either attacker's role in *Elijah's* trial. "When the facts give equal support to two competing inferences, neither is established." (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 198; accord *People v. Smith* (2005) 135 Cal.App.4th 914, 927 ["A 'coin flip' situation … does not constitute substantial evidence."].) The evidence was insufficient to prove Elijah personally used a firearm. We will order the enhancement stricken.

### v. Personal Infliction of Great Bodily Injury

The People concede the evidence did not prove Elijah personally inflicted great bodily injury. They acknowledge the prosecutor at trial relied on chest wounds to prove the great bodily injury allegation. They conclude "there was insufficient evidence that Elijah stabbed [the victim], so there was insubstantial evidence that Elijah personally caused [the victim's] significant lung injury." We accept the concession for the same reasons we found the evidence insufficient to prove personal firearm use.

Because the evidence admitted against Elijah did not establish his role in the crime, it could not establish he personally inflicted the significant lung injury. The evidence did not prove Elijah personally inflicted great bodily injury and we will order the enhancement stricken.[25]

## III. Michael's Contention

Michael contends the jury instructions on aiding and abetting liability permitted "the jury to convict [him] of attempted premeditated and deliberate murder without a finding that he personally acted with premeditation and deliberation." The People point out Supreme Court precedent forecloses the issue. We are bound to follow Supreme

---

[25] Because Elijah was otherwise sentenced to the maximum term, it is unnecessary to remand the case for resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

24.

Court precedent which does in fact foreclose Michael's claim.[26]  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

In *People v. Lee* (2003) 31 Cal.4th 613 (*Lee*), the Supreme Court "conclude[d] … that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, is [nonetheless] sufficiently blameworthy" for enhanced punishment.  (*Id.* at p. 624.)  In *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), the Supreme Court reiterated "increased punishment for an attempt to commit a murder that is willful, deliberate, and premeditated, was a penalty provision and did not create a greater offense or degree of attempted murder."  (*Id.* at p. 162; *People v. Favor* (2012) 54 Cal.4th 868, 876—877.)

The Legislature has since enacted laws retreating, in part, from *Lee, supra*.  Most recently, Senate Bill No. 775 (Stats. 2021, ch. 551, §§ 1 & 2) (SB 775) amended section 1170.95.  Section 1170.95 originally allowed convicted murders to petition for resentencing if "malice [was] imputed … based solely on that person's participation in a crime …."  SB 775 amended the law to expand relief to those convicted of "attempted murder under the natural and probable consequences doctrine …."  But Michael was not convicted under the natural and probable consequences doctrine.

Returning to *Lee, supra,* the Supreme Court made clear its holding was based on direct aiding and abetting, not the natural and probable consequences doctrine.  (*Lee, supra,* 31 Cal.4th at p. 624 ["Of course, where the natural-and-probable-consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy."]; see *Chiu, supra,* 59 Cal.4th at p. 162.)  It appears then SB 775 does not alter the outcome in this case.[27]  The court's direct aiding and abetting instructions here, relative to premeditation and deliberation, were not error under *Lee, supra*.

---

[26] Michael concedes he "raises this claim to preserve it for further review."

[27] Neither party filed supplemental briefing related to SB 775.

## CONCLUSION

To summarize, the convictions in counts 1, 2, and 3 and the premeditation enhancement stand in both cases. As to Michael, the section 12022.7 enhancements remain. As to Elijah, the section 12022.5 and 12022.7 enhancements are stricken.

The count 4 convictions are reversed. All gang enhancements are vacated. The People may elect to retry count 4 and the gang enhancements.

## DISPOSITION

In Michael Rodriguez's case, the judgment is reversed. The conviction in count 4 is reversed. The section 186.22, subdivision (b), enhancements are vacated on all counts. The remaining convictions and findings are affirmed.

In Elijah Rodriguez's case, the judgment is reversed. The conviction in count 4 is reversed. The section 186.22, subdivision (b), enhancements are vacated on all counts. The section 12022.5 and section 12022.7 enhancements are stricken. The remaining convictions and findings are affirmed.

SNAUFFER, J.

WE CONCUR:


DETJEN, ACTING P. J.


DE SANTOS, J.

26.